# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **JASON S. EVANS,** | ) | |
| Plaintiff | ) | Civil Action No. 2:21cv00027 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **KILOLO KIJAKAZI,**[1] | ) | By: PAMELA MEADE SARGENT |
| **Acting Commissioner of Social** | ) | United States Magistrate Judge |
| **Security,** | ) | |
| Defendant | ) | |

*I. Background and Standard of Review*

Plaintiff, Jason S. Evans, ("Evans"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying his claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C. §§ 423 and 1381 *et seq.* Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1). Neither party has requested oral argument; therefore, this case is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rules of Civil Procedure Rule 25(d), Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966).  "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'"  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows Evans protectively filed applications for DIB and SSI on January 11, 2019, alleging disability as of January 1, 2013, due to severe anxiety; history of a broken back with pain and stiffness; right knee pain; right ring finger contracture; high blood pressure; difficulty breathing; and depression. (Record, ("R."), at 15, 220-21, 224-27, 251, 312.) The claims were denied initially and on reconsideration. (R. at 147-56, 159-74.) Evans requested a hearing before an administrative law judge, ("ALJ"). (R. at 175-76.) A hearing was held on September 14, 2020, at which Evans was represented by counsel. (R. at 45-73.)

By decision dated January 13, 2021, the ALJ denied Evans's claims. (R. at 15-37.) The ALJ found Evans met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2017. (R. at 18.) The ALJ found Evans had not engaged in substantial gainful activity since January 1, 2013, the alleged onset date. (R. at 18.) The ALJ determined Evans had severe impairments, namely, cervical and lumbar degenerative disc disease; degenerative changes of the knees; neuropathy; Dupuytren's contracture[2] of the left thumb and right ring finger; chronic obstructive pulmonary disease, ("COPD"); seizure disorder; generalized anxiety disorder; major depressive disorder; adjustment disorder; and

---

[2] Dupuytren's contracture is a condition that gradually causes connective tissue under the skin of the palm to thicken and become scar-like. Although Dupuyren's is not painful, it does restrict movement. The thickened tissue forces several fingers – usually the ring and pinky fingers – to curl in toward the palm. The bending caused by the thick tissue is called contracture. *See* https://www.webmd.com/arthritis/ss/slideshow-treatment (last visited Sept. 20, 2022)*.*

mood disorder, but he found Evans did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18-19.)

The ALJ found Evans had the residual functional capacity to perform sedentary[3] work except he could occasionally push and pull and perform postural activities, but never climb ladder, ropes or scaffolds; he could not work around concentrated exposure to cold temperatures, vibrations, pulmonary irritants and industrial hazards; he could frequently perform fingering; he could understand, remember and carry out simple instructions and perform simple one- to three-step tasks, with occasional interaction with others; he could adapt to occasional changes in the customary workplace setting; and he would be off-task 10 percent of the workday. (R. at 23.) The ALJ found Evans was unable to perform his past relevant work. (R. at 35.) Based on Evans's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found a significant number of jobs existed in the national economy that Evans could perform, including the jobs of a circuit board inspector and an ampoule sealer. (R. at 35-36, 69-70.) Thus, the ALJ concluded Evans was not under a disability as defined by the Act, and he was not eligible for SSI and DIB benefits. (R. at 37.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2021).

After the ALJ issued his decision, Evans pursued his administrative appeals, (R. at 344-45), but the Appeals Council denied his request for review. (R. at 1-5.)

---

[3] Sedentary work involves lifting items weighing up to 10 pounds with occasional lifting or carrying of articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a) (2021).

Evans then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2021). This case is before this court on Evans's motion for summary judgment filed December 15, 2021, and the Commissioner's motion for summary judgment filed January 12, 2022.

## II. Facts and Analysis

Evans was born in 1975, (R. at 35, 49), which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). He has a twelfth-grade education and past work experience as an environmental technician, a cleaner at a sawmill and a welder/fabricator. (R. at 68-69.) Evans was incarcerated from 2014 through 2018. (R. at 427-553.) Evans testified he had knee and neck pain and shoulder pain that radiated into his left arm, which caused his arm to go numb. (R. at 53-55.) He stated his shoulders "pop out" of place when he attempted to use them for overhead activities. (R. at 55.) Evans stated he experienced numbness and tingling when he attempted to grip objects. (R. at 59.)

Barry Hensley, a vocational expert, was present and testified at Evans's hearing. (R. at 68-72.) Hensley testified that a hypothetical individual with the residual functional capacity as found by the ALJ could perform the jobs as a circuit board inspector and an ampoule sealer. (R. at 69-70.) In addition, Hensley was asked to consider the same hypothetical individual, but who would be limited to no more than occasional use of the bilateral upper extremities for handling, feeling, manipulating and fingering. (R. at 70.) Hensley stated that the jobs previously identified would be eliminated, as well as all sedentary work activity. (R. at 70-71.)

Since the following analysis is centered on Evans's ability to handle, to feel, to manipulate and to finger with his bilateral upper extremities, the court will address only the facts relevant to his bilateral upper extremity complaints.

In 2014, x-rays of Evans's right hand showed a flexion deformity in his right ring finger. (R. at 381.) On April 27, 2019, Dr. Wendy Abbott, D.O., examined Evans at the request of Disability Determination Services. (R. at 656-60.) Evans reported plantar flexed right ring finger that could not be extended or straightened passively or actively. (R. at 656.) Dr. Abbott diagnosed trigger finger of the right ring finger. (R. at 658.) On August 21, 2019, Dr. J. Bais Osborne, Jr., M.D., a physician with Abingdon Surgical Associates, saw Evans for severe flexion contracture of his right ring digit. (R. at 722-24.) Dr. Osborne reported Evans had severe flexion contracture of his right ring finger with palpable cords and very stiff joints and his left thumb had some thickening of the cord toward the distal palm and was drawing the thumb slightly. (R. at 723-24.) Dr. Osborne diagnosed Dupuytren's contractures of both hands. (R. at 722-24.) Evans elected to proceed with surgery and was advised he would eventually need to consider intervention for his left thumb. (R. at 724.) Dr. Osborne expressed concern that surgery may not improve Evan's contracture. (R. at 724.) On August 30, 2019, Evans underwent a right ring digit palmar fasciectomy. (R. at 727-29.) In September 2019, Evans's right ring digit was held at slight flexion, but his range of motion had improved, and he had normal sensation distally. (R. at 742, 744.)

On October 21, 2019, Dr. David Bristow, M.D., a state agency physician, completed a medical assessment, finding Evans could perform light[4] work, except

---

[4] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2021).

he could stand and/or walk four hours in an eight-hour workday; sit six hours in an eight-hour workday; occasionally push and pull, including operation of hand and/or foot controls with the bilateral upper and lower extremities; occasionally perform postural activities, but never climb ladders, ropes or scaffolds; and avoid concentrated exposure to extreme cold, vibration, pulmonary irritants and work hazards, such as machinery and heights. (R. at 138-41.) Dr. Bristow indicated no manipulative, visual or communicative limitations. (R. at 140.) The ALJ found this assessment persuasive, but found it was not entirely consistent with the other evidence, which supported greater exertional and manipulative limitations, considering Evans's persistent pain complaints and hand contractures. (R. at 33-34.)

On May 30, 2019, Dr. Jack Hutcheson, M.D., a state agency physician, completed a similar assessment except that he found Evans could stand and/or walk six hours in an eight-hour workday. (R. at 101-02.)

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2021). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2021).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Evans argues the ALJ erred by improperly determining his residual functional capacity. (Plaintiff's Memorandum In Support Of His Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-7.) He argues the ALJ erred by rejecting the opinions of Dr. Abbott, Dr. Breeding and Burke. (Plaintiff's Brief at 6-7.)

Evans filed his applications in January 2019; thus, 20 C.F.R. §§ 404.1520c, 416.920c governs how the ALJ considered the medical opinions here.[5] When making a residual functional capacity assessment, the ALJ must assess every medical opinion received in evidence. The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight" to any medical opinions or prior administrative medical findings, including those from the claimants' medical sources. 20 C.F.R. §§ 404.1520c(a), 416.920(a) (2021). Instead, an ALJ must consider and articulate how *persuasive* he finds all the medical opinions and all prior administrative medical findings in a claimant's

---

[5] 20 C.F.R. §§ 404.920c, 416.920c applies to claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)).

case. *See* 20 C.F.R. §§ 404.1520c(b), (c)(1)-(5), 416.920c(b), (c)(1)-(5) (2021) (emphasis added). Moreover, when a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings "together in a single analysis" and need not articulate how he or she considered those opinions or findings "individually." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1) (2021).

The most important factors in evaluating the persuasiveness of these medical opinions and prior administrative medical findings are supportability and consistency, and the ALJ will explain how he considered these two factors in his decision. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (2021). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (2021). The ALJ is not required to explain the consideration of the other three factors, including relationship with the claimant, specialization and other factors such as an understanding of the disability program's policies and evidentiary requirements.[6] *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

---

[6] An exception to this is when the ALJ finds that two or more "medical opinions or prior administrative medical findings about the same issue are both equally well-supported [] and consistent with the record [] but are not exactly the same," the ALJ will explain how he considered the other most persuasive factors including: the medical source's relationship with the claimant, specialization and other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (2021).

A claimant's residual functional capacity refers to the most the claimant can still do despite his limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a) (2021). The ALJ found Evans had the residual functional capacity to perform sedentary work except he could occasionally push and pull and perform postural activities, but never climb ladder, ropes or scaffolds; he could not work around concentrated exposure to cold temperatures, vibrations, pulmonary irritants and industrial hazards; he could frequently perform fingering; he could understand, remember and carry out simple instructions and perform simple one- to three-step tasks, with occasional interaction with others; he could adapt to occasional changes in the customary workplace setting; and he would be off-task 10 percent of the workday. (R. at 23.)

Evans argues the ALJ erred by improperly determining his residual functional capacity. (Plaintiff's Brief at 5-7.) At first glance it appears that the ALJ adequately weighed the medical evidence and that the medical evidence supports the ALJ's finding as to Evans's residual functional capacity. After careful examination, however, I find the ALJ's finding that Evans was capable of bilateral frequent fingering for the entire relevant period is not supported by substantial evidence. As stated above, the ALJ found that Evans suffered from the severe impairment of Dupuytren's contracture of the left thumb and right ring finger. The undisputed evidence shows that prior to corrective surgery in August 2019, Evans suffered from a severe flexion contracture of his right ring finger that could not be extended or straightened passively or actively. (R. at 656, 723-24.) While it appears that the surgery in 2019 successfully treated this condition, the ALJ's decision makes no distinction in Evans's ability to finger with his right hand prior to the surgery versus his ability at the time of his hearing in September 2020 or at the time of the ALJ's decision in January 2021. The distinction is important since

Evans is seeking benefits beginning in January 2013 and his insured status for DIB benefits expired in December 2017. Insofar as the state agency physicians found that Evans had no manipulative limitations with his hands, the ALJ necessarily rejected these opinions because he found that Evans's contracture was a severe impairment. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c) (2021) (severe impairment significantly limits ability to do basic work activities).

That being the case, I cannot find that the ALJ's finding that Evans could perform frequent fingering for the entire relevant period is supported by substantial evidence.

When asked to consider a hypothetical individual who had the residual functional capacity as found by the ALJ, but who also was limited to *no more than occasional* use of the bilateral upper extremities for handling, feeling, manipulating and fingering, the vocational expert testified that all sedentary jobs would be eliminated. (R. at 70-71.) Thus, if there were a period of time during which Evans was not capable of frequent fingering, he would be disabled. Therefore, I will remand Evans's claims for further development.

An appropriate Order and Judgment will be entered.

DATED:     September 20, 2022.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE